# In the United States Court of Appeals for the Fourth Circuit

RUBY LAMBERT, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

v.

NAVY FEDERAL CREDIT UNION,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Virginia
Case No. 1:19-cv-00103-LO-MSN (The Honorable Liam O'Grady)

## REPLY BRIEF OF PLAINTIFF-APPELLANT

JEFFREY KALIEL
SOPHIA G. GOLD
KALIEL PLLC
1875 Connecticut Avenue NW, 10th Fl.
Washington, DC 20009
*jkaliel@kalielpllc.com*

JONATHAN M. STEISFELD
DANIEL TROPIN
KOPELOWITZ OSTROW
  FERGUSON WEISELBERG GILBERT
1 West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
*streisfeld@kolawyers.com*

MATTHEW W.H. WESSLER
GREGORY A. BECK
GUPTA WESSLER PLLC
1900 L Street NW, Suite 312
Washington, DC 20036
(202) 888-1741
*matt@guptawessler.com*

HASSAN A. ZAVAREEI
ANDREA GOLD
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, DC 20036
*agold@tzlegal.com*

*Counsel for Plaintiff-Appellant*

March 18, 2020

**TABLE OF CONTENTS**

Table of authorities .................................................................................. ii

Introduction ........................................................................................... 1

Argument ................................................................................................2

I.    Navy Federal advances no definition of "debit item" different from the established meaning Ms. Lambert identifies....................................................2

II.   Other contract language and canons of construction support Ms. Lambert's position. ................................................................ 11

III.  Ms. Lambert's breach-of-contract claim is not preempted. ...........................17

Conclusion ............................................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*Allemong v. Augusta National Bank,*
    48 S.E. 897 (Va. 1904) ................................................................. 14

*Doswell Limited Partnership v. Virginia Electric & Power Co.,*
    468 S.E.2d 84 (Va. 1996) ............................................................. 14

*Erie Insurance Exchange v. EPC MD 15, LLC,*
    822 S.E.2d 351 (Va. 2019) ........................................................... 18

*Foster v. Wilson,*
    123 S.E. 527 (Va. 1924) ............................................................... 15

*Gutierrez v. Wells Fargo Bank, NA,*
    704 F.3d 712 (9th Cir. 2012) ....................................................... 18

*In re TD Bank, N.A.,*
    150 F. Supp. 3d 593 (D.S.C. 2015) ....................................... 16, 18

*Martin & Martin, Inc. v. Bradley Enterprises, Inc.,*
    504 S.E.2d 849 (Va. 1998) ..................................................... 14, 16

*Moore v. Chesapeake & Ohio Railway Co.,*
    167 S.E. 351 (Va. 1933) ............................................................... 16

*Mylan Laboratories, Inc. v. Matkari,*
    7 F.3d 1130 (4th Cir. 1993) ......................................................... 15

*Noe v. City National Bank of West Virginia,*
    2020 WL 836871 (S.D.W. Va. Feb. 19, 2020) ........................... 16

*Perri v. Notre Dame Federal Credit Union,*
    No. 71C01–1909–PL–000332 (Ind. Cir. Ct. Mar. 2, 2020) ...... 17

*Providence Square Associates, L.L.C. v. G.D.F., Inc.,*
    211 F.3d 846 (4th Cir. 2000) ......................................................... 4

*Tannehill v. Simmons Bank,*
    2019 WL 7176777 (E.D. Ark. Oct. 21, 2019) ............................ 17

*Walker v. Gateway Milling Co.*,
   92 S.E. 826 (Va. 1917)..................................................................14

*Westmoreland-LG&E Partners v. Virginia Electric & Power Co.*,
   486 S.E.2d 289 (Va. 1997) ...........................................................15

**Statutes**

15 U.S.C. § 1693e ...............................................................................5

Va. Code § 8.4–104(9) ........................................................................3

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019) ...........................................3

NACHA, *ACH Operations Bulletin #1-2014: Questionable ACH Debit Origination* (2014),
   https://perma.cc/3Z3Q-FV3U....................................................7, 8

NACHA, *Rule on ACH Network Risk and Enforcement Topics* (2015),
   http://bit.ly/2W14dIv.....................................................................7

# INTRODUCTION

Navy Federal's concession that its contract's terms "operate the same way for ACH debits as they do for checks" resolves this appeal. An ACH "debit item," Navy Federal agrees, is a "method of payment" like a check. And, it acknowledges, its contract permits it to "assess *one*" insufficient-funds fee for "each refused check"—not a separate fee each time the same check is presented and refused. Treating ACH debits and checks the "same way" (to use Navy Federal's words) can therefore mean only one thing: Navy Federal may charge its customers only one insufficient-funds fee for authorizing a single ACH payment, just as it may charge only one fee for a single check.

That conclusion is not, as Navy Federal claims, contrary to "how the ACH debit system works." Instead, it recognizes the reality—backed up by the industry rules on which Navy Federal relies—that a customer's authorization of payment by ACH is distinct from a merchant's later attempts to collect that payment. Merchants remain free to make multiple collection attempts on a single authorized payment just as financial institutions may provide—through clear contractual language—for separate fees on each such attempt. But nothing about the ACH system permits banks and credit unions to charge fees that are not clearly provided for in their contracts.

Because Navy Federal's contract does not unambiguously permit the assessment of multiple insufficient-funds fees on a single ACH payment, the district court's dismissal of the breach-of-contract claim should be reversed.

## ARGUMENT

## I. Navy Federal advances no definition of "debit item" different from the established meaning Ms. Lambert identifies.

**A.** Navy Federal claims that its reading of its customer contract is based on "common and ordinary definitions" of the contract's language. NFCU Br. 23. Yet, the most notable feature of its argument is its failure to even attempt to define the relevant contractual term: "debit item." To be sure, Navy Federal offers definitions of *other* terms, including "each" and "return." *See id.* But these words are irrelevant when it comes to interpreting the meaning of the key term at issue in this case. And although it repeatedly asserts (without support) that the term "debit item" "includes ACH debit *requests* from a 'third party' … like Mutual of Omaha," it never offers a definition of "debit item"—from a dictionary or any other source—that would include such third-party requests. *See id.* at 13, 17, 22–23, 24, 25, 26, 29. That failure, standing alone, is fatal to Navy Federal's claim (at 2) that that the "plain meaning" of the contract "unambiguously" supports its position.

The *only* definition of "debit item" in this case is the one Ms. Lambert provides—a definition supported by both ordinary use and industry practice. As explained in Ms. Lambert's opening brief, the only plausible meaning of the term is

a payment that an *account holder* has authorized to be made from her account—not a third party's attempt to obtain that payment. A "debit"—both in ordinary use and as used in the banking industry—means an "instruction that one gives to a bank to pay money directly from one's account." Debit, *Black's Law Dictionary* (11th ed. 2019). And an "item" is a "negotiable instrument or a promise or order to pay money." Item, *id.*; *see also* Va. Code § 8.4–104(9). Taking the terms together, "debit item" can only mean a form of payment akin to a check or other "negotiable instrument," in which a bank or credit union's customer authorizes payment from the customer's account. A Navy Federal customer thus cannot be charged two insufficient-funds fees for authorizing a single ACH payment—just as she cannot be charged twice for bouncing the same check.

Rather than challenging that established meaning of "debit item," Navy Federal argues that it should prevail "even if the Court were to turn to Ms. Lambert's dictionary definitions," because "*Mutual of Omaha* submitted two … 'instruction[s]' to make 'charge[s] against' Ms. Lambert's 'bank deposit account.'" NFCU Br. at 29 (emphasis changed). But a "debit item," as Ms. Lambert has explained, is not just *any* "instruction" for payment, but an instruction, like a check, "that one gives … to pay money directly *from one's account*." Debit, *Black's Law Dictionary* (emphasis added). Indeed, Navy Federal agrees that a "debit item" is a "method of payment" like a check. NFCU Br. at 26–27, 30. But it fails to recognize the conclusion that follows: A

*third-party's* later attempt to collect that payment is not itself a separate "debit item" subject to an additional insufficient-funds fee. Otherwise, even a third party's unauthorized or fraudulent "instruction" to withdraw money from a customer's account, assuming it is returned unpaid, would be a "returned debit item" subject to a fee. The contract cannot be read to require that "absurd result[]." *Providence Square Assoc., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 852 (4th Cir. 2000).[1]

Navy Federal also tries to distract from the key contractual language, arguing that Ms. Lambert's focus on the term "debit item" "ignor[es] the operative verb 'return.'" NFCU Br. at 27. But the relevant language does not use the *verb* "return," as Navy Federal says, but the *adjective* "returned." Because "returned" modifies "debit item," a re-presented request for payment cannot be a "returned debit item" unless it is first a "debit item." It is thus not enough for Navy Federal to argue that it "returned" Mutual of Omaha's re-presented request for payment. Even assuming the request was returned, it was not a returned "debit item."[2]

---

[1] Navy Federal, like the district court, relies on Ms. Lambert's supposed concession that an "item" includes a "request or invitation for payment," which Navy Federal takes to include "requests" for payment by third parties. NFCU Br. at 29 (quoting Opening Br. at 20). But, as Ms. Lambert explains in the portion of her brief that Navy Federal cites, that interpretation of her argument "misses [her] central point" that "an item under the contract is 'a *customer* request for payment or transfer'—not a request for payment by a third party." Opening Br. at 20; *see* JA 10–13 ¶¶ 29, 34, 41, 43.

[2] Navy Federal claims that Ms. Lambert "admitted" that her interpretation "required the district court to '[s]et aside'" the terms "returned debit" and to read

**B.** Under the only definition of "debit item" in the case—a bank customer's authorization to withdraw funds from her account—Navy Federal's contract permitted it to charge Ms. Lambert only one fee for insufficient funds here. The contract says that a "*a* fee may be assessed ... for *each* returned debit item." JA 28 (emphasis added). And Ms. Lambert authorized only one payment from her account to Mutual of Omaha. By charging her two insufficient-funds fees on that single authorized attempted payment, Navy Federal breached its contract's plain terms.

In disputing that straightforward conclusion, Navy Federal confuses Ms. Lambert's single authorized payment with a different kind of authorization that (it claims) she also gave here. To authorize a *payment* by ACH, a bank customer must provide a merchant with an account number and an authorization—in writing—to withdraw funds from the account. *See* Electronic Funds Transfers Act, 15 U.S.C. § 1693e. If the bank rejects the merchant's request for payment based on that authorization, however, NACHA's rules allow the merchant to re-present the request up to two times. *See* Opening Br. at 5–6. Based on those rules, Navy Federal argues that, "in authorizing Mutual of Omaha to collect her insurance bill through

---

"'item' in isolation." NFCU Br. at 13. That is wrong. What Ms. Lambert actually argued is that "the words 'returned debit' are adjectives qualifying the key term and noun: 'item,'" and that Navy Federal's reading of the contract to include any "debit attempt" "would make the term 'item' superfluous." JA 67–68. Her argument, in other words, was that the court's interpretation of "returned debit item" should consider the meaning of the word "item," not that it should ignore that word's modifiers.

the ACH debit system," Ms. Lambert thereby also "authorized it to retry the debit transaction … multiple times." NFCU Br. at 6, 10. Thus, it concludes, Mutual of Omaha's requests for payment, like the original payment itself, were "authorized" by Ms. Lambert and, for that reason, were themselves separate "ACH debit items" subject to a fee. NFCU Br. at 36.

Navy Federal's argument (once again) misses the point. There is no dispute that Ms. Lambert gave written authorization for only a single withdrawal from her account. Even if, by operation of NACHA's rules, she can be said to have authorized Mutual of Omaha to request payment multiple times, that is not an authorization to make additional withdrawals. Rather, it is an authorization only to make multiple collection attempts on the *single* withdrawal she authorized. Ms. Lambert has thus still provided only one "instruction … to pay money" from her account, Debit, *Black's Law Dictionary*, and one "order to pay money," Item, *Black's Law Dictionary*. Each of Mutual of Omaha's requests for payment were attempts to collect on that one "debit item."[3]

---

[3] Navy Federal argues only that Ms. Lambert impliedly authorized Mutual of Omaha's re-presented payment request "by authorizing Mutual of Omaha to pay her insurance bill via the ACH debit system." NFCU Br. at 10; *see also id.* at 6, 31, 36. It does not argue, and there is no evidence in the record, that Ms. Lambert *expressly* authorized the re-presented request. Regardless, an authorization to re-present a payment request—whether express or implied—is not an authorization for a separate withdrawal and therefore not a separate "debit item" under Navy Federal's contract.

That conclusion is, again, made clear by the close analogy between ACH payments and checks. Even when a merchant is authorized to re-present a returned check multiple times to a bank for payment, the re-presentment does not create a *separate* "check" for which Navy Federal's contract would permit a separate fee. In the same way, a merchant's re-presentment of the same ACH payment—even assuming the account holder has authorized it—is not a separate "debit item" subject to another fee under the contract.

The same NACHA rules on which Navy Federal relies also back this up. The rules take pains to distinguish between a merchant's initial request for payment, which is based on a discrete authorization by an account holder to withdraw funds, and a subsequent re-presentation of the same payment request, which is just an additional "attempt to collect" those funds. NACHA, *ACH Operations Bulletin #1-2014: Questionable ACH Debit Origination* 6–8 (2014), https://perma.cc/3Z3Q-FV3U. To ensure that a financial institution does not wrongly believe that a re-presented payment request is for a separate authorized payment, NACHA requires that a re-presented request "contain the identical data as the original" and include the label "RETRY PYMT." NACHA, *ACH Operations Bulletin #1-2014* at 6; NACHA, *Rule on ACH Network Risk and Enforcement Topics* (2015), http://bit.ly/2W14dIv. A merchant may not submit a *new* payment request based on a request that a bank or credit union has already rejected unless it first "obtain[s] a *new authorization,*" in writing, to

withdraw funds from the customer's account. NACHA, *ACH Operations Bulletin #1-2014* at 8 (emphasis added).[4]

The more extreme argument advanced by Navy Federal's amici—that Ms. Lambert's position "pose[s] a threat to the efficient operation of the ACH network"—is based on the same confusion between authorization of *payment* and authorization to *collect* that payment. Amici Br. at 9. Amici argue that the "allowance of … second and third attempts at ACH payment is an essential part of the ACH system." *Id.* at 8. But Ms. Lambert has never disputed Mutual of Omaha's authority to re-present its request for payment under NACHA's rules. Nor does she challenge

---

[4] Despite its own reliance on NACHA's rules both in this Court and below, Navy Federal objects to Ms. Lambert's reliance on them on the ground that the rules do not "control whether Navy Federal breached a separate contract term with Ms. Lambert." NFCU Br. at 40 n.18. But Ms. Lambert relies on the rules not to define any terms of Navy Federal's contract, but only to elucidate "the nature of a merchant's second request for payment," Opening Br. at 19, and to explain why such a request does not meet the definition of "debit item" under the contract. If, however, the Court accepts Navy Federal's request that it "ignore Ms. Lambert's arguments in reliance on" the rules, *see* NFCU Br. at 40 n.18, the Court should likewise reject Navy Federal's reliance on them to show that Mutual of Omaha was authorized to re-present its request for payment. *See* Mem. ISO Mot. to Dismiss, Dkt. 20 at 5 n.8 (arguing that the court "may consider" the rules because they "explain[] procedures central to Ms. Lambert's claim—the number of times [a bank] may process a reinitiated or represented ACH debit entry"). There is nothing else in the record that would suggest such an implied or express authorization.

Navy Federal also points out that NACHA's rules are "not publicly available." NFCU Br. at 40 n.18. For that reason, Ms. Lambert's opening brief cited a public NACHA bulletin explaining the rules' operation—the same bulletin on which Navy Federal relied below and on which it continues to rely in this Court. *See* NACHA, *ACH Operations Bulletin #1-2014*. In this brief, Ms. Lambert—like Navy Federal—limits her discussion of the rules to that public bulletin.

the right of banks and credit unions, including Navy Federal, to assess a fee for such a re-presented request if they choose. Indeed, she has given examples of bank contracts that do exactly that. *See, e.g.*, JA 14. Her argument is only that, under Navy Federal's contract, a re-presented payment request is not a separate "debit item" subject to a separate fee. Contrary to amici's argument, the ACH network does not depend on Navy Federal's ability to collect fees to which its customers have never agreed.

**C.** Navy Federal's various attempts to show that Ms. Lambert's definition of "debit item" would be unworkable in practice are based on misrepresentations of her position. They are also conclusively false, given that other bank contracts have long used similar language in precisely the sense that Ms. Lambert proposes.

Navy Federal first argues that Ms. Lambert "confus[es]" the term "debit item"—which it says is a "method of payment"—with "the purpose of the authorized ACH payment"—i.e., "the underlying bill for which the funds are being requested." NFCU Br. at 26–27. "Ms. Lambert's argument that 'item' means her insurance bill makes no sense," Navy Federal argues, because it "cannot return her insurance bill"—to which it has "no access"—but "can only return the debit item presented to pay that bill." *Id.* at 27. It is Navy Federal that is confused. Ms. Lambert has never equated the term "debit item" with the "underlying bill." To the contrary: Her argument is that a "debit item" is, as Navy Federal appears to agree, "a method of

payment—an alternative to a check or credit card." Opening. Br. at 17. But, like a check or credit card, it is a method of payment by the *account holder*, not—as Navy Federal asserts—a mere *request* for payment by a third party.

Nor has Ms. Lambert ever argued that separate ACH payments are the same "debit item" just because they are made for the same "purpose." The definition she identifies turns on the account holder's authorization of payment by ACH, not on the purpose for which the payment is made. Navy Federal thus could have charged Ms. Lambert two fees if she had made two separate written authorizations to withdraw funds from her account for which she lacked funds, even if those withdrawals were meant to pay the same insurance bill—just as it would have been entitled to charge multiple fees for separate checks written to pay the same bill. But, for the same reason that it may not charge separate fees each time a merchant re-presents a returned check for payment, it may not charge separate fees for a merchant's repeated re-presentment of the same ACH payment.

Navy Federal also misrepresents Ms. Lambert's argument in another way. It characterizes her definition of "debit item" as including only debits submitted directly to the bank "by the customer" rather than "by the customer's merchant." NFCU Br. at 33. If that were true, it argues, "an ACH debit request could *never* trigger [a non-sufficient funds] fee because those requests *always* originate from third parties (not the account holder herself)." *Id.* But, to repeat, the established meaning of "debit

item" requires only that a bank customer authorize a payment from the customer's account. It does not require that the customer directly transmit that authorization to the bank or credit union. Again, ACH payments in this way work exactly like checks. Like a check, an ACH payment authorization is an instruction by an account holder to pay money from the customer's account, made in writing and provided to a merchant as a form of payment. Both checks and ACH payments are thus forms of payment authorized by the customer from the customer's account, even though it is the *merchant* that ultimately presents it to the bank.

## II. Other contract language and canons of construction support Ms. Lambert's position.

**A.** Lacking any definition of "debit item" that supports its position, Navy Federal shifts its focus to language from other sections of the contract. But that language offers no aid to Navy Federal; it actually makes clear that "debit item" means precisely what Ms. Lambert says it means.

Consider the contract's statement that "[a]n ACH debit might be made as a result of an authorization you gave a third party to automatically transfer funds from your account to pay your monthly insurance premium." NFCU Br. at 24 (quoting JA 11 ¶ 32). Navy Federal points to this clause as supporting its argument that an "ACH debit" includes the third party's requests for payment based on that authorization. *Id.* Nothing in that phrase even hints at Navy Federal's position. On the contrary, the language on which Navy Federal relies makes clear that an "ACH

debit" is an "authorization" by the *account holder* ("you") to the "third party" for purposes of making a specific payment ("your monthly insurance premium")—not the third party's presentment of the authorization to the bank for payment.

Navy Federal also relies on a contract provision explaining the order in which "Navy Federal posts items presented on your account," including "Automated Clearing House (ACH) debits." JA 27. But that language, at best, suggests that ACH "debits" are "items" that may be presented on a customer's account—a conclusion that Ms. Lambert does not dispute. It does not suggest that the words "item" or "debit" include a third party's repeated submissions of an ACH debit for payment, much less that Navy Federal is entitled to charge a fee for such requests. Rather, as Ms. Lambert's opening brief explains, "debits" in this part of the contract must be interpreted in light of the other "items" listed there—including "debit card transactions" and "checks written"—all of which are instructions by an *account holder* to make payments from the account. JA 27.

Ms. Lambert's reading is also reinforced by multiple other contract provisions (all identified in her opening brief). *See*, *e.g.*, JA 28 (providing that, if Navy Federal declines to pay an overdraft, "*your transaction* will be declined and/or *your* check/ACH will be returned, unpaid" (emphasis added)); *id.* (referring to "*your* overdraft" (emphasis added)); JA 47 (stating that, when making electronic bill payments, "*you are requesting* us to make payments *for you* from your" account (emphasis added)). Those

provisions cannot be reconciled with Navy Federal's reading of the contract, and Navy Federal simply ignores them.

In particular, Navy Federal nowhere explains the incongruity that would result from its reading—that re-presented ACH debits would be subject to multiple insufficient-funds fees while re-presented checks would not. As Navy Federal acknowledges, the contract's terms "treat checks the same way they treat debit items: Navy Federal may assess one [non-sufficient funds] fee for 'each refused check,' just as it may assess one . . . fee for 'each returned debit item.'" NFCU Br. at 30; *see also id.* at 31 (the terms "operate the same way for ACH debits as they do for checks"). Like an ACH debit, a check is a written authorization to withdraw money from a bank customer's account, provided by the customer to a merchant and then presented by the merchant to the bank for payment. And like an ACH debit, the merchant may present the check for payment multiple times. NFCU Br. at 26 n.14 (noting that "there are no laws that determine how many times a check may be resubmitted"). Navy Federal does not dispute that its contract permits only one fee per "refused check"—no matter how many times the check is re-presented and returned. It suggests no reason that ACH debits should be treated differently.

**B.** Navy Federal has little to say on the settled canons of contract law that support Ms. Lambert's reading. It does not dispute that contracts under Virginia law must be given a "reasonable construction," *Allemong v. Augusta Nat'l Bank*, 48 S.E. 897,

899 (Va. 1904), or that reasonable consumers would expect to be charged, at most, one insufficient-funds fee for authorizing a single payment exceeding the available funds in their accounts. Opening Br. at 27–28. Nor does it dispute that its contract should be interpreted in light of the background rules requiring clear disclosure of fees in the banking industry, NFCU Br. at 44, or that any ambiguity in its contract must be construed against it. *Martin & Martin, Inc. v. Bradley Enterprises, Inc.*, 504 S.E.2d 849, 851 (Va. 1998). Navy Federal's only response to these points is to fall back to its claim that its contract is unambiguous. But Navy Federal cannot identify a single definition of "debit item" that even arguably—much less unambiguously—supports a reading contrary to the established meaning Ms. Lambert identifies.

Navy Federal's claim that the contract is unambiguous is especially untenable given that other bank and credit-union contracts use the word "item" in a sense that plainly means the bank customer's authorization to withdraw funds, not the merchant's later presentment of that authorization for payment. *See, e.g.*, JA 14. Even if the contract were unambiguous, that evidence would be admissible under Virginia law. *Doswell Ltd. Partnership v. Va. Elec. & Power Co.*, 468 S.E.2d 84, 90 (Va. 1996). Such trade usage does not "add to or contradict the language used" in the contract, "but simply interprets and explains its meaning." *Walker v. Gateway Milling Co.*, 92 S.E. 826, 828 (Va. 1917) (internal quotations omitted). Thus, it is deemed incorporated into a contract "unless the terms of the writing clearly exclude" it. *Westmoreland-LG&E*

*Partners v. Va. Elec. & Power Co.*, 486 S.E.2d 289, 293 (Va. 1997) (internal alterations omitted).[5]

Navy Federal responds that trade meaning is irrelevant to its customer contract because the contract is not between two industry participants. But Navy Federal does not suggest any way to read a technical term like "debit item" without reference to the term's use and established meaning in the banking industry. "It is a cardinal rule of construction that in construing a written instrument, technical words will be taken in their technical sense … unless there appear in the writing a manifest intention of using them in a different sense." *Foster v. Wilson*, 123 S.E. 527, 528–29 (Va. 1924). And that meaning cannot be discounted simply because a contract "deals with a technical subject that may be considered complex to the uninformed lay person who is not familiar with the topic." *Westmoreland-LG&E Partners*, 486 S.E.2d at 294. Indeed, it is odd for Navy Federal—an industry participant that chose to include a

---

[5] Navy Federal argues (at 38) that Ms. Lambert waived reliance on other financial institution's contracts because she relied on them below only to support a failure-to-disclose claim. But Ms. Lambert actually alleged the existence of the contracts in support of her breach-of-contract claim and, in opposition to Navy Federal's motion to dismiss, relied on those allegations for the same purpose. JA 69 (arguing that the meaning of "item" is "routinely used in banking contexts to refer to all iterations of, or attempts at executing, a payment or deposit on an account"); *see also id.* at 19 ¶ 70, 65–66, 69 n.9. The allegations—supported by specific examples of contractual language—are, at a minimum, plausible allegations of fact that must be taken as true on Navy Federal's motion to dismiss. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). As explained below, Navy Federal's attempt to recharacterize Ms. Lambert's arguments for interpreting the contract as a preempted failure-to-disclose claim is meritless.

contractual term with a technical meaning—to argue against Ms. Lambert's reliance on that meaning here. Navy Federal "cannot use technical terms with a fixed meaning, and then disclaim such meaning" when inconvenient to its position. *Moore v. Chesapeake & OH. Ry. Co.*, 167 S.E. 351, 357 (Va. 1933).

At a minimum, the existence of the other bank or credit-union contracts shows that Ms. Lambert's reading is a plausible one. Given those contracts, Navy Federal's construction cannot be "so clear that it unambiguously excludes" Ms. Lambert's reading. *Westmoreland-LG&E Partners*, 486 S.E.2d at 295. The contract is thus at least ambiguous, and the ambiguity "must be construed against" Navy Federal. *Martin & Martin, Inc. v. Bradley Enterprises, Inc.*, 504 S.E.2d 849, 851 (Va. 1998).

As explained in Ms. Lambert's opening brief, the existence of such ambiguity in bank or credit-union contracts is the reason why courts consistently deny motions to dismiss in cases like this one. Opening Br. at 33. It is true, as Navy Federal points out, that the contract language at issue in some of those cases was different than the language here. But even where the issues were different, the cases stand for the proposition that dismissal at the pleading stage is inappropriate where interpretation of a bank contract turns on the contract's "imprecise use of [key] terms." *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 624 (D.S.C. 2015). And courts in recent months have denied motions to dismiss in cases raising the precise claims at issue here. *See, e.g., Noe v. City Nat'l Bank of W. Va.*, 2020 WL 836871, at *6 (S.D.W. Va. Feb. 19, 2020); *Tannehill*

*v. Simmons Bank*, 2019 WL 7176777, at *1 (E.D. Ark. Oct. 21, 2019); *see also Perri v. Notre Dame Federal Credit Union*, Order, No. 71C01–1909–PL–000332, at 6 (Ind. Cir. Ct. Mar. 2, 2020), *available at* http://bit.ly/2xOTmr2 (refusing to dismiss breach-of-contract claim where contract did not "unambiguously provide[] that a separate or additional [insufficient-funds] or overdraft fee could be imposed on the same transaction" and rejecting argument that multiple fees were authorized "simply because [a] third party presents the transaction for payment a second or third time"). The district court's contrary holding that Navy Federal's contract is unambiguous—without reference to any definition of the key term and in the face of other financial institutions' inconsistent use—should be reversed.

## III.   Ms. Lambert's breach-of-contract claim is not preempted.

Falling back, Navy Federal asks this Court to affirm on the "independent ground" that Ms. Lambert's breach-of-contract claim is preempted because of her reliance on federal regulations governing a bank or credit union's disclosure of fees. NFCU Br. at 3. The regulations preempt that claim, Navy Federal argues (at 44), because Ms. Lambert invokes them "not to interpret the [contract], but rather to *expressly argue that NFCU's disclosures are legally insufficient*." But the opposite is true. Ms. Lambert does not claim that Navy Federal failed to comply with federal disclosure requirements and does not seek to "force it to make additional or different disclosures." *Id.* She instead claims that Navy Federal breached the terms of its

contract by charging fees that the contract does not permit. She points to the federal regulations only for the purpose of showing that Navy Federal's customers, in agreeing to that contract, could reasonably have assumed that the terms specifying fees would be clear and easily understandable. Opening Br. at 30. Navy Federal does not dispute that such "background principles" are relevant under Virginia law for purposes of interpreting the contract's terms. *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 356–357 (Va. 2019).

As the district court explained—in a holding that Navy Federal does not challenge—it is "well established that true breach of contract … claims are not federally preempted, even if the result of those claims may affect a federal credit union's fee disclosures." JA 129. When breach-of-contract claims are based on "'genuine disputes about the terms of the contract and the parties' compliance therewith, … their impact on the bank's exercise of its powers is only *incidental*.'" JA 130 (quoting *TD Bank*, 150 F. Supp. 3d at 610). Here, Navy Federal chose to set forth contractual terms limiting the circumstances in which it may charge a fee. Reliance on Virginia's canon of construction for the purpose of interpreting those express terms would not "significantly interfere" with Navy Federal's "exercise of its powers" as a credit union. *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 722 (9th Cir. 2012); *see* JA 130. That is especially true given that Navy Federal itself specified that its contract must be interpreted under Virginia law. JA 29.

In any event, Navy Federal's last-ditch preemption argument, even if correct, would not get it far. Ms. Lambert's reliance on the background legal principles governing federal credit unions is relevant only to her argument on one canon of construction—a point to which she devotes just two paragraphs of her brief. Opening Br. at 30–31. Navy Federal provides no reason or authority supporting its assertion that a single argument on appeal could result in preemption of Ms. Lambert's entire breach-of-contract claim.

## CONCLUSION

This Court should reverse the decision below.

Respectfully submitted,

/s/Matthew W.H. Wessler

| | |
|---|---|
| HASSAN A. ZAVAREEI | MATTHEW W.H. WESSLER |
| ANDREA GOLD | GREGORY A. BECK |
| TYCKO & ZAVAREEI LLP | GUPTA WESSLER PLLC |
| 1828 L Street NW, Suite 1000 | 1900 L Street NW, Suite 312 |
| Washington, DC 20036 | Washington, DC 20036 |
| agold@tzlegal.com | (202) 888-1741 |
| | matt@guptawessler.com |
| JONATHAN M. STEISFELD | |
| DANIEL TROPIN | JEFFREY KALIEL |
| KOPELOWITZ OSTROW | SOPHIA G. GOLD |
| FERGUSON WEISELBERG GILBERT | KALIEL PLLC |
| 1 West Las Olas Blvd, Suite 500 | 1875 Connecticut Avenue NW, 10th Fl. |
| Fort Lauderdale, FL 33301 | Washington, DC 20009 |
| streisfeld@kolawyers.com | jkaliel@kalielpllc.com |

March 18, 2020

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,022 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

/s/ *Matthew W.H. Wessler*
Matthew W.H. Wessler

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2020, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Matthew W.H. Wessler*
Matthew W.H. Wessler